1

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                        **EASTERN DISTRICT OF CALIFORNIA**

10

11   LON CARTER,                         )   Case No.: 1:07-cv-01325-AWI-BAM (PC)
                                         )
12                Plaintiff,             )
                                         )
13       v.                              )   FINDINGS AND RECOMMENDATIONS
                                         )   REGARDING:  (1) PLAINTIFF'S MOTION TO
14   NICK DAWSON, et al.,                )   POSTPONE CONSIDERATION OF
                                         )   DEFENDANTS' MOTION FOR SUMMARY
15                Defendants.            )   JUDGMENT; (2) PLAINTIFF'S SECOND
                                         )   MOTION TO COMPEL; (3) PLAINTIFF'S
16                                       )   MOTION TO STRIKE J. BUCK'S
                                         )   DECLARATION; (4) PLAINTIFF'S MOTION TO
17                                       )   STRIKE L. HANSEN'S DECLARATION; (5)
                                         )   PLAINTIFF'S MOTION TO STRIKE
18                                       )   DEFENDANTS' SUBMITTED WEATHER
                                         )   REPORTS; (6) DEFENDANTS' MOTION TO
19                                       )   STRIKE; AND (7) DEFENDANTS' MOTION FOR
                                         )   SUMMARY JUDGMENT
20                                       )
                                         )   (ECF Nos. 119, 152, 160, 163, 164, 165, 168)
21                                       )
                                         )
22   _____)

23       **I.       Procedural Background[1]**

24          Plaintiff Lon Carter ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in

25   this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds against Defendants Dawson

26

27   _____

28   [1] The procedural background is derived from the Court's docket and the District Court's order granting Plaintiff's motion
     for relief from judgment.  (ECF No. 145.)

                                                1

and Mendoza-Powers for unconstitutional conditions of confinement in violation of the Eighth Amendment.

On September 15, 2011, Defendants filed a motion for summary judgment.  (ECF No. 119.) On October 6, 2011, Plaintiff requested an extension of time to file an opposition to Defendants' motion for summary judgment.  (ECF No. 121.)  On October 12, 2011, the Court granted Plaintiff thirty days to file a response to the motion for summary judgment.  (ECF No. 122.)

Plaintiff did not file an opposition.  Instead, Plaintiff filed a "motion to show cause" regarding the relevance of Exhibit D to the Declaration of Lonnie Hansen in support of Defendants' motion for summary judgment.  (ECF No. 124.)  Plaintiff also filed a motion for the appointment of an expert witness.  (ECF No. 126.)  The Court denied the motion for expert witness on November 28, 2011. (ECF No. 127.)

On December 22, 2011, based on Plaintiff's failure to file an opposition, the Court issued an order to show cause why the action should not be dismissed with prejudice for failure to obey the Court's order.  The Court granted Plaintiff fifteen days to respond to the order and warned Plaintiff that his failure to respond would result in dismissal of the action with prejudice.  (ECF No. 129.) Plaintiff did not respond to the order to show cause or otherwise contact the Court.

On February 6, 2012, more than forty-five (45) days after issuing the show cause order, the Court dismissed the action, with prejudice, for Plaintiff's failure to comply with court orders and failure to prosecute this action. (ECF No. 130.) The Clerk of the Court entered judgment and the action was closed. (ECF No. 131.)

On February 21, 2012, Plaintiff filed a notice of appeal, which was processed to the Ninth Circuit Court of Appeals.  Plaintiff claimed that he had never received the Court's December 22, 2011, dismissal notice.  (ECF Nos. 132, 133.)  On May 9, 2012, the Ninth Circuit Court of Appeals denied Plaintiff's motion to proceed in forma pauperis based on a finding that the appeal was frivolous.  (ECF No. 136.)  Plaintiff paid the appellate fees on May 30, 2012. (ECF No. 137.) Thereafter, on August 7, 2012, the Ninth Circuit summarily affirmed this Court's judgment. (ECF No. 138.)

Plaintiff sought reconsideration of the Ninth Circuit's decision. The reconsideration request reportedly contained new evidence indicating that Plaintiff did not receive this Court's December 22,

2011 order to show cause. The Ninth Circuit directed defendants-appellees to file and serve a response to the motion for reconsideration.  (ECF No. 139.)  On January 3, 2013, the Ninth Circuit denied Plaintiff's motion for reconsideration without prejudice to the filing of a motion for relief from judgment with the district court pursuant to Fed. R. Civ. P. 60(b). (ECF No. 140.)

Following the Ninth Circuit's denial of his request for reconsideration, Plaintiff filed a motion for relief from the dismissal judgment pursuant to Federal Rule of Civil Procedure 60(b) on February 11, 2013.  (ECF No. 141.)  Defendants opposed the motion on March 4, 2013, and Plaintiff replied on March 22, 2013.  (ECF Nos. 142, 143.)  On August 16, 2013, the District Court granted Plaintiff's motion for relief from judgment, vacated entry of final judgment and reopened this matter.  The Court directed Plaintiff to file an opposition to Defendants' motion for summary within thirty (30) days. (ECF No. 145.)  By separate order, the District Court notified Plaintiff of the requirements for opposing Defendants' motion for summary judgment pursuant to Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (ECF No. 144.)

On September 17, 2013, Plaintiff filed his opposition to Defendants' motion for summary judgment.  (ECF Nos. 146-150.)  Plaintiff also filed a motion to postpone consideration of Defendants' motion for summary judgment.  (ECF Nos. 151, 152.)

On October 8, 2013, Defendants opposed the motion to postpone consideration of the motion for summary judgment.  (ECF No. 155.)  Plaintiff replied to Defendants' opposition on October 25, 2013.  (ECF No. 158.)

On October 29, 2013, Defendants replied to Plaintiff's opposition to the motion for summary judgment.  (ECF No. 159.)  Defendants also filed objections to Plaintiff's evidence and a motion to strike.  (ECF No. 160.)

On November 18, 2013, Plaintiff filed a motion to strike J. Buck's declaration and a motion to strike L. Hansen's declaration.  (ECF Nos. 163, 164.)  Plaintiff also filed a second motion to compel. (ECF No. 165.)

On November 20, 2013, the Court granted Plaintiff an extension of time solely to respond to Defendants' motion to strike.  (ECF No. 166.)

On November 22, 2013, Plaintiff filed a surreply in response to Defendants' reply in support of the motion for summary judgment.  (ECF No. 167.)

On November 25, 2013, Plaintiff filed a motion to strike Defendants' submitted weather reports.  (ECF No. 168.)  Plaintiff also filed an opposition to Defendants' evidentiary objections and motion to strike.  (ECF No. 169.)  On December 20, 2013, Defendants filed a reply to Plaintiff's opposition, which included a response to Plaintiff's motion to strike Defendants' submitted weather report.  (ECF No. 173.)  On August 22, 2014, the Court denied Plaintiff's request to file a reply to Defendants' reply.  (ECF No. 177.)

Currently pending before the Court are the following motions:  (1) Defendants' motion for summary judgment filed on September 15, 2011; (2) Plaintiff's motion to postpone consideration of Defendants' motion for summary judgment filed on September 17, 2013; (3) Plaintiff's motion to strike J. Buck's declaration filed on November 18, 2013; (4) Plaintiff's motion to strike L. Hansen's declaration filed on November 18, 2013; (5) Plaintiff's second motion to compel filed on November 18, 2013; (6) Plaintiff's motion to strike Defendants' submitted weather reports filed on November 25, 2013; and (7) Defendants' motion to strike.  The motions are deemed submitted.  Local Rule 230(l).

## II.      Plaintiff's Motion to Postpone Consideration of Defendants' Motion for Summary Judgment

Plaintiff moves to postpone consideration of Defendants' motion for summary judgment on the ground that he needs to conduct or obtain additional discovery pursuant to Federal Rule of Civil Procedure 56(d).  In particular, Plaintiff seeks discovery of the following:  (1) evidence related to when he obtained his right shoulder blade tattoo; (2) a master record maintained by the California Department of Justice, known as a CLETS report; and (3) a complete copy of Avenal State Prison Operational Procedure #68.  (ECF Nos. 151, 152.)

### A. Legal Standard

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).  Plaintiff bears the burden of specifically identifying relevant

4

information, where there is some basis for believing that the information actually exists, and

demonstrating that the evidence sought actually exists and that it would prevent summary judgment.

Blough v. Holland Realty, Inc., 574 F.3d 1084, 1091 n.5 (9th Cir. 2009) (quotation marks and citation

omitted); Tatum v. City and County of San Francisco, 441 F.3d 1090, 1100-01 (9th Cir. 2006).

Additionally, Plaintiff must make some showing of diligence, that he sought the requested information

during the discovery period, or that there is good reason he has not been able to obtain the information

before now. See Landmark Dev. Corp. v. Chambers Corp., 752 F.2d 369, 372 (9th Cir. 1985).

### B.   Discussion

As a preliminary matter, the Court finds that Plaintiff has not demonstrated diligence in

seeking the requested discovery.  Discovery in this matter closed in April 2010, and Defendants did

not file their motion for summary judgment until September 15, 2011.  (ECF Nos. 18, 119.)

Subsequently, and as noted above, the Court initially dismissed this matter in February 2012 because

Plaintiff failed to file a substantive opposition to Defendants' summary judgment motion.  The record

reflects that Plaintiff did not seek additional discovery or extension of the discovery deadline at any

point between the close of discovery in April 2010 and the initial dismissal of this matter in February

2012.  Plaintiff does not explain the delay.

### Tattoo Evidence and CLETS report

In their statement of undisputed facts, Defendants assert that Plaintiff obtained a tattoo on his

right shoulder blade between the time of his arrest for which he was serving time at Avenal State

Prison and August 19, 2011.  (ECF No. 119-2, DUF 31, 32.)  To support this assertion, Defendants

cite the Declaration of L. Hansen.  L. Hansen's declaration is based on (1) a California Department of

Justice master record of information pertaining to the identification and criminal history of any person

(a CLETS report), which included a confidential criminal investigation report identifying Plaintiff's

tattoos at the time of his arrest; and (2) a memorandum dated August 19, 2011, authored by G. Cortez,

an Assistant Institutional Gang Investigator.  (ECF No. 119-6; Defs' Ex. D, Hansen Dec. ¶¶ 3-4 and

Attachment A; ECF No. 119-1, p. 7, n. 2.)

Plaintiff requests to postpone consideration of the motion for summary judgment so that he

may obtain a copy of the CLETS report and a copy of the confidential criminal investigation record

maintained by the California Department of Justice regarding the number of tattoos he had according to his 1989 parole release records and before his current 1994 prison commitment.  (ECF No. 151, p. 1.)  Plaintiff reportedly requires this information to demonstrate that he had a right shoulder blade tattoo before his current 1994 prison commitment.  (ECF Nos. 151, p. 1; 152, p. 3.)

Plaintiff does not require additional discovery to introduce evidence of when he got a right-shoulder blade tattoo.  Plaintiff is competent to provide sworn testimony regarding his own tattoo in opposing the motion for summary judgment.  Fed. R. Civ. P. 56(c)(4) (permitting use of an affidavit or declaration to oppose a motion for summary judgment made on personal knowledge, setting forth admissible facts and showing the declarant is competent to testify).  Plaintiff admits that he has personal knowledge of his body and the tattoos.  (ECF No. 151, p. 2.)  Moreover, with regard to the CLETS report, Plaintiff could have obtained his own criminal history information from the California Department of Justice pursuant to California Penal Code §§ 11121 *et seq.* at any point during the pendency of this case and before submitting his opposition.  Plaintiff acknowledges that these records are maintained by the California Department of Justice and are not limited by his discovery of documents from the California Department of Corrections and Rehabilitation.  (ECF No. 151, p. 1.)

The Court therefore finds that postponing consideration of the motion for summary judgment is not necessary to allow Plaintiff to obtain evidence of when he got his own tattoos.  Plaintiff already is able to provide such evidence essential to justify his opposition.  Further, evidence of when Plaintiff received his tattoos is not dispositive of the issues in this matter and the Court has not relied on such evidence in its Findings and Recommendations.

Operational Procedure #68

With regard to Operational Procedure #68, Plaintiff admits that when he was served with discovery responses, he only received four of seven pages of the plan.  (ECF No. 152, p. 4.)  Plaintiff does not explain why he failed to complain about his dissatisfaction with the discovery response earlier in this matter.  More importantly, the four pages received by Plaintiff are the same four pages relied upon by Defendants in support of their motion for summary judgment.  (ECF No. 119-5, Defs' Ex. C, Attachment 1, at pp. 5-8.)  The Court also notes that Defendants supplied Plaintiff with a complete copy of Operational Procedure #68 on October 29, 2013.  (ECF No. 161.)  Although this

occurred after Plaintiff filed his opposition, Plaintiff received a complete copy of the procedure before he filed his, albeit unauthorized, surreply in opposition to the motion for summary judgment on November 22, 2013.  (ECF No. 167.)  The Court has not stricken Plaintiff's surreply from the record, but has limited its consideration of the surreply solely to issues pertaining to Operational Procedure #68.

The Court therefore finds that postponing consideration of the motion for summary judgment is not warranted to allow Plaintiff to obtain a complete copy of Operational Procedure #68.

For the reasons stated, the Court will recommend that Plaintiff's motion to postpone consideration of Defendants' motion for summary judgment be DENIED.

**III.    Plaintiff's Second Motion to Compel**

Pending before the Court is Plaintiff's motion to compel further responses to his Requests for Production of Documents Nos. 2 and 3 filed on November 18, 2013.  (ECF No. 165, p. 1.)  The deadline for completion of discovery and the filing of any motion to compel was April 26, 2010.  (ECF No. 18.)  Plaintiff's motion to compel is untimely and may be denied on this basis.  See, e.g., Mitchell v. Cate, 2014 WL 1671589, *2 (E.D. Cal. Apr. 28, 2014) (denying prisoner's motion to compel filed after discovery deadline as untimely); Doria v. Nappi, 2013 WL 5597178, *1 (E.D. Cal. Oct. 11, 2013) (denying prisoner's motion to compel filed after deadline in court's scheduling order as untimely); Rasberry v. Trevino, 2012 WL 734141, *1 (E.D. Cal. Mar. 6, 2012) (denying motion to compel filed after discovery deadline as untimely).

Additionally, the Court previously denied Plaintiff's repeated attempts to compel further responses to his Requests for Production of Documents Nos. 2 and 3.  On June 23, 2010, Plaintiff filed a motion to compel the production of documents.  (ECF No. 50.)  On November 1, 2010, the Court denied Plaintiff's motion to compel the production of additional documents with respect to requests 2 and 3.  (ECF No. 79, p. 4.)  Plaintiff filed a subsequent motion to compel the production of documents in February 2011.  (ECF Nos. 85, 92.)  On May 10, 2011, the Court again denied Plaintiff's motion to compel the production of documents with respect to requests 2 and 3.  (ECF No. 105, pp. 5-6.)

Notwithstanding the above, as Plaintiff is a prisoner proceeding pro se, the Court will consider the substance of his motion to compel and, although untimely, will construe it as motion for additional discovery pursuant to Federal Rule of Civil Procedure 56(d).

Plaintiff's "request No. 2" seeks "documents for the facility six yard 650 housing unit building for the twelve months for the complete year of 2006." (ECF No. 165, p. 1.)  Plaintiff's "request No. 3" seeks "the attendance documents of each and every officer, sergeant, and Lieutenant for days, grounds hazard check list narrative, and discrepencies [sic] inspection documents verifying their attendance for the days, weeks, months, of the signed documents." (ECF No. 165, p. 1.)

Plaintiff contends that Defendants previously stated that they could not locate any documents responsive to these requests, but have now submitted J. Buck's declaration in which he declares that "he has personally observed administrative staff visiting the housing units" and "inspecting the housing units." (ECF No. 165, p. 2.)  Plaintiff believes that Defendants should be compelled to provide documents supporting J. Buck's declaration that he personally witnessed administrative staff visiting and inspecting the housing units. (Id.)

In the relevant declaration, J. Buck declares, "I have personally observed administrative staff visiting the housing units." (ECF No. 119-3, Defs' Ex. A, Buck Dec. ¶ 9.)  J. Buck does not declare that he personally witnessed any inspections.  It is unclear what documents Plaintiff believes exist to support J. Buck's declaration of personally witnessing administrative staff visiting the housing units.  Indeed, Plaintiff fails to demonstrate that the evidence he seeks actually exists.  Blough, 574 F.3d at 1091 n.5; Tatum, 441 F.3d at 1100-01.  The Court therefore finds it inappropriate to order further discovery pursuant to Rule 56(d) or to compel the production of documents.

For the reasons discussed above, the Court will recommend that Plaintiff's second motion to compel be DENIED.

### IV.    Plaintiff's Motion to Strike J. Buck's Declaration

Plaintiff moves to strike J. Buck's declaration in its entirety for reasons nearly identical to those supporting his second motion to compel.  Specifically, Plaintiff moves to strike J. Buck's declaration because Defendants rely on J. Buck's statement that he personally observed administrative staff visiting the housing units, but Defendants failed to produce any documents responsive to his

document production requests Nos. 2 and 3.  (ECF No. 163, pp. 1-2.)  Plaintiff states that request No. 2 "was for discrepencies [sic] found during inspection documents, for the facility six yard 650 housing unit building for the twelve months, for the complete year of 2006."  (Id. at 2.)  Plaintiff states that request No. 3 "was for the attendance of each and every officer, sergeant, and lieutenant, for days, grounds hazard checklist narrative, and discrepencies [sic] inspection documents verifyi[ng] their attendance for the days, weeks, months, of the signed documents."  (Id.)

Plaintiff argues that "if the documents identifying the staff members cannot be located, then Defendants cannot say they have supporting inspection documents to support J. Buck's declaration, that he personally witnessed the appropriate administrative staff inspecting the housing unit …, or that the declarant J. Buck personally observed administrative staff visiting the housing units."  (Id.) Plaintiff contends that Defendants either have documents identifying the staff J. Buck personally witnessed conducting the inspections or that Defendants deliberately have withheld documents verifying that the inspections were conducted.

As discussed above, J. Buck declares, "I have personally witnessed administrative staff visiting the housing units."  (ECF. No. 119-3, Defs' Ex. A, Buck Dec. ¶ 9.)  J. Buck's declaration is based on personal knowledge and may properly be considered for purposes of summary judgment.  Fed. R. Civ. P. 56(c)(4); see, e.g., Sherman v. Aguilar, 2012 WL 1107752, *3 (S.D. Cal. Apr. 2, 2012) (denying motion to strike declaration that complied with Rule 56(c)(4).)  It is unclear what documents Plaintiff believes exist to support a statement based on personal knowledge.  J. Buck also does not declare that he personally observed staff conducting inspections.  Thus, Defendants cannot be faulted for their purported failure to produce documents identifying the staff conducting the inspections or documents verifying that inspections were conducted.

Plaintiff has provided no basis to strike the declaration of J. Buck and the Court will recommend that Plaintiff's motion to strike be DENIED.

### V.   Plaintiff's Motion to Strike L. Hansen's Declaration

Plaintiff moves to strike L. Hansen's declaration in its entirety for reasons nearly identical to those supporting his motion to postpone consideration of Defendants' motion for summary judgment. Namely, Plaintiff contends that L. Hansen's declaration should be stricken because it relies, in part, on

evidence of a confidential criminal investigation maintained by the California Department of Justice, which has not been provided to Plaintiff or to the Court. The confidential criminal investigation reportedly supports Defendants' contention that Plaintiff did not have a right shoulder blade tattoo before his current incarceration.

As discussed above, Plaintiff is able to raise a genuine dispute of fact regarding Defendants' contention concerning his tattoos through an affidavit based on his own personal knowledge. Fed. R. Civ. P. 56(c)(4). That Plaintiff is unable to obtain a copy of the confidential criminal investigation or that the Court may review a copy submitted under seal does not provide grounds to strike L. Hansen's declaration in its entirety. Further, the Court has not relied on evidence of Plaintiff's tattoo or the confidential criminal investigation in reaching these Findings and Recommendations.

Accordingly, the Court will recommend that Plaintiff's motion to strike L. Hansen's declaration be DENIED.

**VI.     Plaintiff's Motion to Strike Defendants' Submitted Weather Reports**

Plaintiff seeks to strike Defendants' weather reports reportedly submitted in support of their motion for summary judgment. (ECF No. 168, pp. 1-2.) Defendants respond that Plaintiff's motion is really an argument in opposition to Defendants' objections and, more importantly, that Defendants did not file any weather reports in support of their motion for summary judgment, their reply, or their objections to Plaintiff's evidence. (ECF No. 173, p. 4.)

The Court has reviewed Defendants' motion for summary judgment, their reply and their objections to Plaintiff's evidence. (ECF Nos. 119, 159, 160.) Defendants have not submitted any weather reports in support of their motion for summary judgment. Rather, Plaintiff has submitted the weather reports in question to support his opposition to summary judgment. (ECF No. 148-2, pp. 73-133.) Accordingly, the Court will recommend that Plaintiff's motion to strike be DENIED as moot.

**VII.    Defendants' Motion to Strike**

Defendants move to strike certain of Plaintiff's exhibits based on Defendants' evidentiary objections. (ECF No. 160, p. 8.) Defendants also move to strike Plaintiff's statement of disputed facts because it fails to comply with Local Rule 260(b). (ECF No. 160, p. 9.)

Defendants' evidentiary objections, such as authentication, relevance and hearsay, are not sufficient grounds to strike Plaintiff's exhibits.  Defendants' evidentiary objections have been considered and, where appropriate, addressed in these Findings and Recommendations.

Defendants also have not provided sufficient grounds to strike Plaintiff's statement of disputed facts for failure to comply with Local Rule 260(b).  Local Rule 260(b) states that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." Local Rule 260(b).  In his opposition and statement of undisputed facts, Plaintiff repeats many of the allegations in his complaint and maintains his own account of the facts in this case. (ECF Nos. 146, 147.)  He includes numerous citations to the record, which he contends support his version of the facts. Id.  The Court finds that Plaintiff's opposition papers satisfy the primary purpose of Local Rule 260(b) by identifying the facts that Plaintiff disputes and the material in the record relied upon to support Plaintiff's assertions.

For these reasons, the Court will recommend that Defendants' motion to strike be DENIED.

## VIII.   Defendants' Motion for Summary Judgment

### A.   Legal Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a) summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to liberally construe the filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

11

1  demonstrate the absence of a genuine issue of material fact." <u>Celotex</u>, 477 U.S. at 323 (internal

2  quotations and citations omitted).

3        If the moving party meets its initial responsibility, the burden then shifts to the opposing party

4  to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co.</u>

5  <u>v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this

6  factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to

7  tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

8  support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); <u>Matsushita</u>, 475 U.S. at 586

9  n.11.

10        The parties bear the burden of supporting their motions and oppositions with the papers they

11  wish the Court to consider and/or by specifically referencing any other portions of the record for

12  consideration. <u>Carmen v. San Francisco Unified School Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001).

13  The Court will not undertake to scour the record for triable issues of fact. <u>Simmons v. Navajo County,</u>

14  <u>Arizona</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).

15        In arriving at this order, the Court carefully reviewed and considered all arguments, points and

16  authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any,

17  objections, and other papers filed by the parties. Omission of reference to an argument, document,

18  paper, or objection is not to be construed to the effect that this Court did not consider the argument,

19  document, paper, or objection. This Court thoroughly reviewed and considered the evidence it

20  deemed admissible, material, and appropriate.

21      **B. Summary of Relevant Allegations in Plaintiff's Complaint**

22        Plaintiff arrived at Avenal State Prison's facility six yard on April 20, 2005. In August 2006,

23  Plaintiff contracted a methicillin resistant staphylococcus aureus infection ("MRSA") while

24  incarcerated at Avenal State Prison. On August 4, 2006, Plaintiff underwent emergency knee surgery

25  as a result of the MRSA infection.

26        Plaintiff alleges that his MRSA infection was caused by prison overcrowding, Defendants'

27  failure to conduct housing unit inspections for over a year, Defendants' denial of hot water for a two

28  month period, and Defendants' failure to comply with operational procedures and protocols to reduce

the transmission of MRSA.  Plaintiff alleges that Defendant Dawson did not provide adequate unit

inspections or cleaning supplies and deprived Plaintiff of hot water during overcrowded conditions.

Plaintiff alleges that Defendant Mendoza-Powers deprived Plaintiff of hot water and knew of the

substantial MRSA risk to Plaintiff and the inmate population.

### C.  Statement of Undisputed Material Facts ("UMF")

1.      At the times alleged in the complaint, Plaintiff was incarcerated at Avenal State Prison.

2.      Plaintiff was taken to Community Medical Center on August 4, 2006, for pain and

swelling in his left knee.  The initial, differential diagnosis was septic arthritis, gout, or a Staph

infection.  On August 5, 2006, Plaintiff had a surgical procedure on his knee, cultures revealed a

MRSA infection which was treated with antibiotics.  Plaintiff was discharged back to Avenal on

August 8, 2006.  (Defs' Ex. B at ¶ 16.)

3.      Avenal State Prison Operational Procedure #68, entitled "Inmate Staphylococcus

Exposure and Control Plan" was issued in December 2005. This plan was in place throughout 2006,

and was reissued in February 2007.  (Defs' Ex. C at ¶ 2; ECF No. 161-1.)

Plaintiff attempts to raise a genuine dispute of fact by contending that Defendant Dawson

failed to establish a protocol to identify, treat and reduce Plaintiff's MRSA infection because he

sought treatment for his swollen knee on August 3, 2006, but was sent back to his dorm until the

MRSA culture resulted in knee surgery on August 4, 2006.  (ECF No. 146, pp. 14-15; ECF No. 146,

Pl's Dec. in Opp'n to Miller Dec. ¶¶ 1-2.)  Defendants object to Plaintiff's declaration concerning

evidence of Plaintiff's diagnosis and treatment as irrelevant.  (ECF No. 160, p. 5.)  Defendants'

objection is SUSTAINED.  Plaintiff's evidence concerning his treatment is not relevant to the

operational procedure in effect on August 2006.  Fed. R. Evid. 401.

Plaintiff also attempts to raise a genuine dispute by claiming that the procedure fails to instruct

on how to treat or identify a MRSA infection and there is no evidence this was the procedure in effect

during 2006.  (ECF No. 146, pp. 15-16; ECF No. 146, Pl's Dec. in Opp'n to Miller Dec. ¶ 2.)

Defendants object to Plaintiff's declaration that the procedure failed to contain diagnostic and

treatment guidelines as irrelevant.  Defendants also object on the ground that Plaintiff's declaration is

improper argument and not evidence and that Plaintiff is not competent to testify regarding the

effective dates of the procedure.  (ECF No. 160, p. 5.)  Defendants' objections are SUSTAINED.  The

purported inadequacies of the procedure are not relevant and Plaintiff is not competent to testify

regarding the operative procedure in effect on August 2006.

        4.      Avenal is a Level II institution which houses low to medium security inmates in a

general population setting. Except for the Administrative Segregation Unit and the Administrative

Segregation Outpatient Clinic, all housing at Avenal is dormitory housing.  (Defs' Ex. A at ¶ 2.)

        5.      The population at Avenal is presently approximately 5,700 inmates. In August 2006,

the inmate population was approximately 7,500, which was about 240% of the original design

capacity. This does not mean that each dormitory was at 240% of design capacity because the gym

was converted to a housing unit. (Id.)

        Plaintiff attempts to raise a genuine dispute of fact by contending that Avenal State Prison

housed inmates at approximately 247% beyond the original design capacity.  To support this

statement, Plaintiff relies on an exhibit labeled "Second ASP.M.061901 Appeal."  (ECF No. 146, p.

17; ECF No. 148-1, pp. 76-77, Second ASP.M.061901 Appeal.)  Defendants object to Plaintiff's cited

evidence on the grounds that it is not a true and correct copy of the document because it contains

annotations, apparently added by Plaintiff, has not been authenticated, and contains hearsay.  (ECF

No. 160, p. 6.)  Defendants' objections are SUSTAINED.  However, even if the Court considered

Plaintiff's exhibit, it does not raise a genuine dispute that Avenal State Prison was at least 240% over

design capacity.

        6.      The Warden has no control over the number of inmates housed at Avenal. Decisions

about prison capacity are all made by Headquarters. (Id.)

        Plaintiff attempts to raise a genuine dispute of material fact by asserting that his second level

appeal response fails to state that Defendants have no control over the number of inmates housed at

Avenal State Prison.  (ECF No. 146, p. 17; ECF No. 148-1, pp. 76-77, Second ASP.M.061901

Appeal.)  As noted above, Defendants object to Plaintiff's second level appeal because is it not a true

and correct copy of the document, has not been authenticated, and contains hearsay.  The Court has

sustained Defendants' objections.  However, even if the Court considered the evidence, it does not

raise a genuine dispute of material fact.  In relevant part, the appeal response states, "All increases in

14

the inmate population at ASP are mandated by the CDCR due to an increase need to house the Level-II inmate population." (ECF No. 148-1, p. 77.)  This statement confirms that the California Department of Corrections and Rehabilitation, not the Warden, is responsible for the number of inmates housed at Avenal State Prison.

7.    Avenal employs inmates as porters, who are responsible for collecting trash, and cleaning the housing units. (Def.s' Ex. A at ¶ 3.)

Plaintiff attempts to raise a genuine dispute of fact by contending that defendants, not inmate porters, are responsible for conducting housing unit inspections.  (ECF No. 146, p. 18.)  This assertion does not raise a triable issue of fact that Avenal State Prison employs inmates as porters who are responsible for *cleaning* the housing units.

8.    In the dormitories, the showers, toilet and sink areas are cleaned, and the floors are mopped twice every day of the week with a disinfectant cleaner. Diluted bleach is also used for cleaning.  (Id. at ¶ 4.)

Plaintiff attempts to raise a dispute by contending that the housing unit inspection and inmate cleaning supervision is only conducted on a weekly basis, not twice every day.  (ECF No. 146, pp. 18-19.)  Plaintiff declares, "In the (ASP) building 650 unit showers, toilets and sink areas, and floors were not mopped twice every day of the week with a disinfectant cleaner, with diluted bleach used for cleaning."  (ECF No. 146, Pl's Dec. in Opp'n to Buck Dec. ¶ 4.)  Defendants object to this statement on the grounds that Plaintiff lacks personal knowledge.  Defendants report that Plaintiff was assigned to Vocational Printing during the times as issue in this case and he would not have been present in his housing unit at the times they were cleaned.  (ECF No. 160, p. 3.)  Defendants provide evidence of Plaintiff's assignment from August 2005 through August 2007.  (ECF No. 161-1, Ex. A.)  Defendants' objection is SUSTAINED.  There is no indication that Plaintiff has personal knowledge of all cleaning conducted in his housing unit.

9.    Every inmate is responsible for keeping his immediate bunk area neat and clean. Inmates are provided with storage space for their personal belongings. Disinfectant cleaning supplies are provided to inmates for cleaning their personal space. Inmates are also provided with personal hygienic supplies, such as soap. (Id. at ¶ 5.)

Plaintiff attempts to raise a dispute of fact by claiming that no antibacterial soap was provided per Operational Procedure 68.  (ECF No. 146, Pl's Dec. in Opp'n to Buck Dec. ¶ 5.)  Defendants object on the grounds of relevance and note that Plaintiff's reference is to a portion of the procedure providing that antibacterial soap will be given to inmates who are diagnosed with MRSA. Defendants' objection is SUSTAINED.  Plaintiff's statement is irrelevant and unsupported by the operational procedure.

10.     Cleaning supplies are provided to inmates whenever requested. The officers bring around cleaning supplies at least once a week to the inmates' living quarters for general use. (Id. at ¶ 6.)

Plaintiff declares, "Cleaning supplies during 2006 of august were not supplied to plaintiff/inmates whenever requested for a specific need, with the officers bringing around cleaning supplies at least once a week to inmates in living quarters for general use."  (ECF No. 146, Pl's Dec. in Opp'n to Buck Dec. ¶ 6.)  Defendants object to Plaintiff's statement on the grounds that it lacks foundation, contending that Plaintiff could not have personal knowledge, and can only speculate about every time an inmate asked for cleaning supplies for a specific need.  (ECF No. 160, p. 3.) Defendants' objection is SUSTAINED.  Plaintiff has not established personal knowledge of other inmates' requests for cleaning supplies.  Plaintiff also has not identified an instance in which he requested, but was denied cleaning supplies for a specific need.

11.     Inmates at Avenal are particularly vigilant in keeping the living areas clean. Inmates do not hesitate to file appeals if the dorm areas are not kept clean. (Id. at ¶ 7.)

12.     Inmate clothing and linens are exchanged and laundered once each week. (Id. at ¶ 8.)

13.     The Warden, or a staff member acting in that capacity, the chief custodial officer, the chief medical officer, and other administrative staff visit Avenal's living and activity areas at least weekly. (Id. at ¶ 9.)

Plaintiff attempts to raise a genuine dispute by declaring, based on his personal knowledge, that the warden, designee, chief custodial officer, or chief medical officer did not visit his building and living areas weekly.  (ECF No. 146, Pl's Dec. in Opp'n to Buck Dec. ¶ 9.)  Defendants object to this statement on the grounds that Plaintiff lacks personal knowledge, contending that Plaintiff had a job

assignment and could not know what activities occurred in his housing unit while he was at work. (ECF No. 160, p. 3.)  Defendants' objection is SUSTAINED.  Plaintiff has not presented competent evidence that he remained in his housing unit all day every day to demonstrate that visits were not occurring by administrative staff.  Plaintiff's conclusory declaration is not sufficient to raise a genuine dispute of material fact in this instance.

14.     In addition to the inspections conducted by the Warden and other administrative staff, Correctional Sergeants and Lieutenants in the housing units conduct inspections to assure that their areas of responsibility are properly cleaned and maintained. (Id. at ¶ 10.)

Plaintiff attempts to raise a genuine dispute of material fact by citing a memorandum stating that the facility six captain, lieutenant and program sergeant were to conduct housing unit inspections effective September 18, 2006.  (ECF No. 146, p. 22.)  Plaintiff declares, "The weekly inspections for plaintiff's (ASP) Avenal State Prison 650 building housing unit went into effect on September 13, 2006."  (ECF No. 146, Pl's Dec. in Opp'n to Buck Dec. ¶ 10.)  Defendants object on the grounds of relevance.  Defendants' objection is SUSTAINED.  Plaintiff has not presented competent evidence that inspections were not being conducted by lieutenants and sergeants during the relevant time period.

15.     MRSA is an acronym for Methicillin-Resistant Staphylococcus aureus. Staphylococcus aureus is a bacteria that can cause different kinds of infections in humans and animals. (Def.s' Ex. B at ¶ 2.)

16.     The standard medical treatment for a Staphylococcus aureus infection is the use of methicillin drugs. Even though MRSA is resistant to methicillin drugs there are other antibiotics which can be used to treat MRSA infections. (Id.)

Plaintiff attempts to raise a genuine dispute of material fact by contending that (1) methicillin drugs was not the standard medical treatment that Defendants used on August 3 or 4, 2006, to treat his MRSA infection and (2) the operational procedure does not state that the standard medical treatment for a staphylococcus aureus infection is the use of methicillin drugs.  (ECF No. 146, p. 22; ECF No. 146, Pl's Dec. in Opp'n to Chapnick Dec. ¶ 2.)  Defendants object on the grounds of relevance.  (ECF No. 160, p. 4.)  Defendants' objection is SUSTAINED.  Neither Plaintiff's treatment nor the operational plan are relevant to the standard medical treatment for a Staphylococcus aureus infection

or MRSA.  Further, Plaintiff is not competent to provide a medical expert opinion.  Fed. R. Evid. 701, 702.

17.     The original strain of MRSA developed in hospitals and is known as "healthcare associated" MRSA. Other strains of MRSA have developed among individuals who have not been exposed to a healthcare environment. These strains of MRSA are known as "community associated" MRSA. (Id. at ¶ 3.)

To the extent Plaintiff attempts to raise a genuine dispute of material fact, Defendants object because Plaintiff is not competent to provide medical expert opinion.  Defendants' objection is SUSTAINED.

18.     Community-associated MRSA has been identified in a variety of populations, including athletes participating in close contact sports, military recruits in barracks settings, intravenous drug users, men who have sex with men, tattoo recipients, religious community members and inmate populations. (Id. at ¶ 4.)

Plaintiff attempts to raise a dispute by declaring that he has never used intravenous drugs, he is not gay and he is not the recipient of a new shoulder blade tattoo.  (ECF No. 146, Pl's Dec. in Opp'n to Chapnick Dec. ¶ 4.)  Defendants object on the grounds that it is argumentative and irrelevant.  (ECF No. 160, p. 4.)  Defendants' relevance objection is SUSTAINED.

Plaintiff also attempts to raise a dispute by suggesting that persons diagnosed with community-based MRSA have been exposed to a health care environment.  (ECF No. 146, Pl's Dec. in Opp'n to Chapnick Dec. ¶ 4.)  Defendants object on the ground that Plaintiff is not competent to offer an expert opinion.  Defendants' objection is SUSTAINED.

19.     MRSA causes a range of diseases similar to the diseases caused by methicillin sensitive Staphylococcus aureus. The most common are skin lesions, including abscesses, cellulitis, impetigo (blisters) and boils. Frequently skin abscesses are accompanied with an area of central necrosis, which resemble spider bites. Often there is no fever or other signs of signs of inflammation. (Id. at ¶ 5.)

Plaintiff attempts to raise a dispute of material fact by detailing his treatment on August 3 and 4, 2006.  (ECF No. 146, Pl's Dec. in Opp'n to Chapnick Dec. ¶ 5.)  Defendants object on the grounds

of relevance.  (ECF No. 160, p. 4.)  Defendants' objection is SUSTAINED.  Plaintiff's treatment is not relevant to the diseases caused by MRSA.

20.     MRSA can also cause folliculitis (inflammation of hair follicles), deep-seated abscesses, pyomyositis (an infection in the muscles), osteomyelitis (an infection in the bone and marrow), staphylococcal toxic-shock syndrome, pneumonia and sepsis. (Id. at ¶ 6.)

21.     The infections caused by MRSA cannot be clinically distinguished from those caused by methicillin sensitive Staphylococcus aureus, except through a culture of the bacteria. (Id. at ¶ 7.)

22.     It is estimated that 10% to 30%, and perhaps as high as 40% of all persons are colonized with Staphylococcus aureus, in their nasal openings, sinuses, mucous membranes, or breaks in their skin. This means that a smaller number of people are colonized with MRSA. (Id. at ¶ 8.)

Plaintiff attempts to raise a genuine dispute of fact by claiming there were no medical test results showing that he was colonized with Staphylococcus aureus.  (ECF No. 146, Pl's Dec. in Opp'n to Chapnick Dec. ¶ 8.)  Defendants object to Plaintiff's declaration on the ground of relevance, arguing that they have never contended that Plaintiff was colonized.  Defendants' objection is SUSTAINED.

23.     A person who is colonized with Staphylococcus aureus caries the bacteria on or in their bodies. Persons who are colonized may have recurrent infections, or they may never develop an infection. Persons who are colonized can pass the bacteria to others who do develop infections. (Id. at ¶ 9.)

Plaintiff again attempts to raise a genuine dispute by contending that he has never been diagnosed as a colonized recipient of staphylococcus and that his cultures grew out MRSA.  (ECF No. 146, Pl's Dec. in Opp'n to Chapnick Dec. ¶ 9.)  Defendants object to Plaintiff's declaration on the ground of relevance, arguing that they have not contended that Plaintiff was colonized.  (ECF No. 160, p. 4.)  Defendants' objection is SUSTAINED.

24.     The most common method of transmission of MRSA is person-to-person via contaminated hands. In prison settings MRSA has also been linked to sharing towels and soap, sharing tattoo or injection drug equipment, infrequent showering by inmates and by using fingernails or tweezers to lance boils. (Id. at ¶ 10.)

19

25.      Inmates who get tattoos or use injection drugs in prison have an extremely high risk of contracting a Staphylococcus aureus infection because the skin is deliberately penetrated, the equipment is unsanitary and is used on numerous individuals. (Id.)

26.      Because MRSA infections include pneumonia, MRSA can be transmitted by the infected person coughing up droplets of infectious particles that contaminate the environment. Individuals who are colonized with MRSA in their nasal membranes can spread MRSA when they have a cold or other upper respiratory infection. (Id. at ¶ 11.)

Plaintiff's statement that he did not have pneumonia is not relevant to Defendants' evidence as to how MRSA can be transmitted.

27.      Staphylococcus aureus can enter the body through a break in the skin, migrate to a different part of the body, and cause an infection, months or years later. Therefore, if a single inmate contracts a MRSA infection, there is no way to determine when or how that individual came in contact with the bacteria. (Id. at ¶ 12.)

28.      In a prison setting the best preventative measures are: frequent hand washing; never touching another person's wounds, infected skin or dirty bandages; not scratching skin rashes; maintaining personal hygiene through regular showers; keeping personal living spaces clean, including the laundering of bed linens; not sharing personal hygiene items such as soap or towels; cleaning of any hard surfaces shared with others; showering after participating in close-contact personal activities; not getting a tattoo; refraining from injection drugs; and not having sex with other inmates. (Id. at ¶ 13.)

29.      Lowering the temperature of shower or sink water has no effect on the transmission of MRSA. The safest temperature for washing or showering is between 79 and 97 degrees Fahrenheit, essentially lukewarm water. Even lower temperatures should be used by anyone with a skin disease. Temperatures that are too hot may cause burns, which in turn break down the skin's defenses and increase the risk of infection. (Id. at ¶ 14.)

Plaintiff attempts to raise a genuine dispute of fact by contending that he did not have a skin disease justifying the lowered water temperature.  This contention is not relevant to Defendants' evidence that lower temperatures should be used by anyone with a skin disease.

Plaintiff also attempts to raise a genuine dispute of fact by citing to a prison news letter stating that MRSA is preventable with the elementary technique of hot water.  (ECF No. 146, Pl's Dec. in Opp'n to Chapnick Dec. ¶ 14; ECF No. 148-1, pp. 78-87, "Prison Legal News")  Defendants object on the grounds of hearsay and that the author of the article, John E. Dannenberg, is not qualified to express an expert opinion.  Fed. R. Evid. 702.  Defendants' objections are SUSTAINED.

30.     At Avenal, inmates do not control the temperature of the shower water. Plant Operations for the prison adjusts the temperature based on factors such as the weather and inmate preferences. (Id. at ¶ 15.)

31.     An Assistant Institutional Gang Investigator physically examined Carter on August 19, 2011. This examination revealed that Carter has four tattoos. One on his right wrist, one on his chest, one on his neck and one on his right shoulder blade. (Defs' Ex. D at ¶ 5.)

32.     Defendant Dawson was acting warden at Avenal State Prison from May 30, 2007, to August 31, 2007. (Defs' Ex. E, at Defendant Dawson's Response to Interrogatory No. 2.)

33.     Defendant Dawson was not personally responsible for conducting inspections of the housing units at Avenal. (Id. at Response to Interrogatory No. 1.)

Plaintiff attempts to raise a genuine dispute of material fact by citing to his complaint allegations.  (ECF No. 146, p. 32.)  This is not sufficient evidence to raise a genuine dispute of material fact.  In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits and/or admissible discovery material. F. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586, n. 11.

34.     There was no MRSA epidemic at Avenal in August of 2006. (Defs' Ex. E, at Response to Interrogatory No. 4; Defs' Ex. F, at Response of Mendoza Powers to Interrogatory No. 14.)

Plaintiff attempts to raise a genuine dispute of material fact by citation to Operational Procedure #68, which provides, "Recently a medical condition identified as a wound infection caused by a specific organism known as Methicillin Resistant Staphylococcus Aureus (MRSA) have occurred at Avenal State Prison."  (ECF No. 146, p. 32; ECF No. 161-1, p. 6.)  Evidence that a MRSA infection had occurred does not create a triable issue of fact as to whether there was a MRSA *epidemic* at Avenal State Prison.

21

35.     Defendant Mendoza Powers made a considered decision to reduce the temperature of the shower water in an effort to reduce the humidity and additional heat generated by the showers. (Defs' Ex. F, at Response of Mendoza Powers to Interrogatory No. 8.)

### D.  Discussion

On August 4, 2006, Plaintiff underwent emergency surgery on his knee.  The surgery revealed that Plaintiff had a MRSA infection.  Plaintiff claims that he contracted MRSA because the prison was overcrowded, Defendants failed to conduct inspections of the housing units, the temperature of the shower water was lowered for two months and Defendants failed to comply with operational procedures and protocols to reduce the transmission of MRSA.

Defendants assert that they are entitled to summary judgment because Plaintiff cannot prove a causal connection between his contraction of MRSA and the alleged acts of Defendants.  Defendants also assert that the undisputed facts demonstrate that there is no causal connection between Defendants' alleged actions and Plaintiff's MRSA infection.

### 1.  Deliberate Indifference

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.  Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).  To

maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety.  E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

### 2.   Causation

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978).  A plaintiff must prove that the defendant's act, or failure to act, was both the actual cause, and the proximate (legal) cause of his injuries. Arnold v. International Business Machines Corp., 637 F.2 1350, 1355 (9th Cir. 1981).

Plaintiff alleges that he contracted a MRSA infection "because of the overcrowded condition of confinement beyond 247% of the original Avenal designed capacity, failure to conduct housing unit inspections for over a year, being deprived of hot/tempered shower water for the two months of July and August of 2006, [and] the failed local operational procedure and protocols to identify treat and reduce potential transmission of MRSA Infection to Plaintiff and the inmate population."  (ECF No. 147, p. 7.)

Critically, however, Plaintiff admits in his opposition that there is no way to determine when or how an individual comes in contact with MRSA. (ECF No. 147, p. 5 ("There is no way to determine

23

1    when or how an individual comes in contact with the bacteria.  Plaintiff admits this is true.")  Based on

2    this admission, Plaintiff fails to present any evidence to show that Defendants' actions or failure to act

3    were the actual and proximate cause of his MRSA infection.  Defendants also have presented the

4    expert opinion of Dr. Chapnick, Chief Medical Executive at Avenal, that there are a number of ways

5    in which MRSA can be transmitted and there is no way to determine how or when a single inmate

6    came into contact with the bacteria.  (UMF 23-27.)

7           As Plaintiff cannot raise a genuine dispute of material fact regarding causation, the Court finds

8    that Defendants are entitled to summary judgment on this basis alone.

9                          a.   Overcrowding

10          Plaintiff contends that overcrowding was the cause of his MRSA contraction.  (ECF No. 147,

11   p. 7.)  It is undisputed that the population at Avenal was approximately 240% (if not more) of the

12   original design capacity in August 2006.  (UMF 5.)  However, as noted above, Plaintiff cannot present

13   any admissible evidence that the overcrowding caused him to contract MRSA.  Even if he could, it is

14   undisputed that Defendants did not control the number of inmates assigned to Avenal.  (UMF 6.)

15          Plaintiff also has failed to cite any evidence to raise a triable issue that the overcrowding at

16   Avenal resulted in unsanitary conditions and thereby increased Plaintiff's risk of contracting MRSA.

17   It is undisputed that inmate porters cleaned the housing units, disinfectant cleaning supplies were

18   provided to inmates for cleaning their personal space, inmates were provided with personal hygienic

19   supplies, such as soap, officers brought cleaning supplies at least once a week to the inmates' living

20   quarters for general use, and inmate clothing and linens were exchanged and laundered once each

21   week. (UMF 7-12.)

22                          b.   Prison Housing Inspections

23          Plaintiff alleges that Defendants failed to conduct regular weekly inspections of his housing

24   unit.  To support this contention, Plaintiff submits evidence of, amongst other things, a first level

25   response to his administrative appeal dated August 24, 2006 (#ASP-M-06-01901).  The response

26   states, "On a daily basis inspections are conducted in the various housing units by custody staff and

27   any unsanitary conditions are addressed as required."  (ECF No. 147, pp. 8-9; ECF No. 148-1, p. 117.)

28   Plaintiff cannot cite this evidence and simultaneously contend that his housing unit was not inspected.

1   Plaintiff's remaining evidence, a memorandum authored by Sergeant Alfaro announcing that Facility

2   Six would begin weekly housing unit inspections effective September 18, 2006 (after Plaintiff's

3   MRSA infection) does not raise a genuine dispute of material fact that housing inspections were not

4   being conducted prior to that time.  (ECF No. 147, pp. 8-9; ECF No. 148, p. 104.)

5        Plaintiff apparently faults Defendants for failing to personally conduct inspections on a weekly

6   basis.  (ECF No. 147, p. 8.)  Even if Defendants failed to personally conduct such inspections, there is

7   no evidence to demonstrate that the inspections were not completed or that such inspections could not

8   be delegated to other staff members.  Indeed, the California Code of Regulations expressly authorizes

9   the warden to delegate responsibility for the weekly inspections to a designated staff member.  Cal.

10  Code Regs., tit. 15 § 3384.  Defendants presented evidence that administrative staff visit Avenal's

11  living and activity areas at least weekly. (UMF 13.)  Although Plaintiff declares that this was not done,

12  he had a job assignment and could not know each and every activity which occurred in his housing

13  unit while he was at work.  (ECF No. 160, Ex. A.)

14       Significantly, Plaintiff has not presented evidence to raise a triable issue of fact that the

15  purported failure of administrative staff to conduct housing inspections caused his MRSA infection or

16  increased his risk of contraction.  First, Plaintiff has admitted that there is no way to determine when

17  or how an individual comes into contact with MRSA.  (ECF No. 147, p. 5.)  Second, there is no

18  indication the purported failure to conduct inspections resulted in unsanitary conditions increasing the

19  risk of contracting MRSA.  The undisputed evidence reflects that inmates had the means to maintain

20  their personal spaces and personal hygiene, that the dormitories were regularly cleaned using

21  disinfectant cleaner or diluted bleach, and that inmate clothing and linens were exchanged and washed

22  each week.  (UMF 7-12.)  Third, there is no evidence from which a reasonable jury could conclude

23  that Defendants' alleged failure to conduct housing inspections resulted in Plaintiff's MRSA infection

24  or otherwise increased his risk of contraction or that Defendants were deliberately indifferent to such a

25  risk.

26         c.   Shower Water Temperature

27       Plaintiff contends that Defendant Mendoza-Powers was responsible for causing his MRSA

28  infection because she lowered the temperature of the shower water in July and August 2006.  It is

undisputed that Defendant Mendoza-Powers reduced the temperature of the shower water.  (UMF 35.)
It is also undisputed that reducing the temperature of shower water did not increase the risk that
Plaintiff would contract a MRSA infection.  (UMF 29.)  Defendants have offered the opinion of Dr.
Chapnick that lowering the temperature of shower or sink water has no effect on the transmission of
MRSA, the safest temperature is lukewarm water, and that temperatures that are too hot may increase
the risk of infection.  (ECF No. 119-4, Defs' Ex. B, Chapnick Dec. § 14.)  Plaintiff has not presented
any expert testimony or opinion to raise a genuine dispute of material fact that Defendant Mendoza-
Powers' decision to lower the temperature of the shower water increased the risk that Plaintiff would
contract a MRSA infection or that she was deliberately indifferent to any such risk.

Plaintiff contends that Defendants had a mandatory duty to provide Plaintiff with hot/tempered
shower water for his minimal civilized measure of life's necessities.  Plaintiff's citation to Section 430
of Title 24 of the California Code of Regulations, a building standards code section, is inapplicable to
prisons.  Plaintiff's additional reliance on Miller v. French, 530 U.S. 327 (2000) is unavailing.  The
only mention of hot water occurs in the dissenting opinion related to prison conditions in Puerto Rico
in 1979.  Id. at 335-36.  Plaintiff has not cited any cases to support the proposition that the short-term
failure to provide hot water violates the Eighth Amendment.  Cf. Lopez v. Robinson, 914 F.2d 486,
492 (4th Cir. 1990) (finding no clearly established, sufficiently contoured, right to hot showers in
prison).  Only extreme deprivations can be characterized as punishment prohibited by the Eighth
Amendment.  Hudson, 503 U.S. at 8-9 ("extreme deprivations are required to make out a conditions-of-
confinement claim").

d.   MRSA Operational Procedure

Plaintiff appears to forward two main arguments in support of his allegation that Defendants'
operational procedure was deficient.  First, Plaintiff argues that Operational Procedure #68, which
relates to the treatment of inmates exhibiting symptoms of MRSA at Avenal State Prison, was not in
effect in 2006.  Plaintiff contends that because Operational Procedure #68 was first issued in
December 2005, was to be reviewed annually, but was not renewed until February 2007, there was no
operative plan in effect during 2006.  (ECF No. 147, p. 12.)  That the procedure was reviewed two
months late does not mean there was no policy in effect during the relevant time period.  Defendants

26

have provided evidence of Operational Procedure #68, which was in effect during 2006.  (UMF 3; ECF No. 161-1.)  Plaintiff also contends that no MRSA policy existed because a September 30, 2008 grand jury visit to Avenal State Prison found that no such policy existed.[2]  (ECF No. 147, p. 12; ECF No. 149.)  That no policy reportedly existed in 2008 is not relevant to whether or not Operational Procedure #68 was in effect during 2006.

Second, Plaintiff appears to argue that the procedure is deficient because it failed to identify, treat and reduce his MRSA infection before it worsened to the point that he required emergency knee surgery.  (ECF No. 147, p. 11.)  However, there is no evidence that Plaintiff acquired the MRSA bacteria at Avenal and he cannot demonstrate that Defendants' prevention plan was inadequate simply because he developed an infection.  To the extent that Plaintiff contends that the procedure was inadequate because it failed to diagnose and treat his infection, this contention lacks merit.  Medical practitioners, not the procedure itself, are responsible for treatment and diagnosis of medical conditions.  The reported failure to identify and treat his condition by medical providers is not at issue in this action.

**IX.     Conclusion and Order**

For the reasons discussed above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion to postpone consideration of Defendants' motion for summary judgment, filed on September 17, 2013, be DENIED;

2. Plaintiff's second motion to compel, filed on November 18, 2013, be DENIED;

3. Plaintiff's motion to strike J. Buck's declaration, filed on November 18, 2013, be DENIED;

4. Plaintiff's motion to strike L. Hansen's declaration, filed on November 18, 2013, be DENIED;

---

[2] Defendants object to Plaintiff's exhibit, "Grand Jury," based on a lack of authentication, relevance and hearsay. (ECF No. 160, p. 5.)  Defendants' objections are SUSTAINED.  Plaintiff's declaration that he has personal knowledge of the contents of the document is not sufficient to provide authentication. (ECF No. 149).  There are no indicia on the face of the document to indicate that it is the official report of a grand jury and the document is not signed. Fed. R. Evid. 901.  The document also is not relevant because it purportedly relates to conditions in 2008. Fed. R. Evid. 401.  Additionally, the document contains hearsay.  Fed. R. Evid. 801, 802.

5. Plaintiff's motion to strike Defendants' submitted weather reports, filed on November 25, 2013, be DENIED as moot;

6. Defendants' motion to strike, field on October 29, 2013, be DENIED; and

7. Defendants' motion for summary judgment, filed on September 15, 2011, be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 29, 2014**          _/s/ Barbara A. McAuliffe_
UNITED STATES MAGISTRATE JUDGE